UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| V. | § No. A-99-CR-245 LY |
| | § |
| RUSSELL ERXLEBEN | § |

**ORDER**

Before the Court are the United States' Motion for an Order Applying Credit to Defendant's Restitution Debt (Dkt. No. 92); Erxleben's Motion to Stay (Dkt. No. 96); the Government's Response in Opposition (Dkt. No. 98); Erxleben's Motion for Discovery (Dkt. No. 97); the Government's Response (Dkt. No. 98); and Erxleben's Reply (Dkt. No. 99). Also before the Court are Erxleben's Motion to Stay (Dkt. No. 104) and Motion for a Hearing (Dkt. No. 105).

**Factual Background**

Defendant Russell Erxleben is a former NFL player who has twice been convicted of federal felony fraud charges. First, in this case, he pled guilty to securities fraud and conspiracy to commit fraud and in September 2000, he was sentenced to eighty-four months imprisonment and ordered to pay more than $28 million in restitution. In October 2000, the United States filed an application for a writ of continuing garnishment against the Bert Bell/Pete Rozell NFL Player Retirement Plan (Dkt. No. 31). In March 2001, the Court entered an order agreed to by the United States and the Plan, in which the United States agreed not to seek from the Plan payment of pension benefits until the benefits become payable after "properly-executed applications . . . are received." (Dkt. No. 48). Erxleben began supervised release on this conviction on November 29, 2005. Before the expiration of his three year term of supervision, Erxleben was already under investigation for new crimes. In January 2013, Erxleben was again indicted, and charged with wire fraud, securities fraud and money

laundering. *United States v. Erxleben*; No. 1:13-cr-029 LY. He ultimately pled guilty to wire fraud, and on February 24, 2014, he was sentenced to 90 months imprisonment, three years of supervised release, and ordered to pay $93,600 in restitution. Erxleben remains in custody on this second conviction.

The United States filed a motion requesting an order requiring Erxleben to elect to begin receiving his monthly retirement benefits from the Plan, so that the United States could garnish the monthly benefit to meet Erxleben's restitution requirement. The Court granted the United States' motion on December 4, 2018. The United States has now filed another motion, requesting an Order from the Court applying credit of $15,238,841.06 to Erxleben's original restitution debt of $28,058,860.99.

The source of the monies that need to be credited toward Erxleben's restitution is a receivership that arose out of the same events which led to Erxleben's first conviction. Those events were what was proven to be a Ponzi scheme Erxleben operated through Austin Forex International, Inc., International Foreign Exchange Corporation, and AusForex International, Inc., and which resulted in hundreds of victims. In September 1998, the Securities Commissioner for the State of Texas sued to appoint a receiver for these entities. Janet Mortenson was appointed as receiver for AFI and its affiliated entities and took possession of the entities' assets, and solicited claims by creditors and victims of the entities. Ultimately, the allowed claims in the receivership case totaled $36,395,634.93.

While the receivership case was pending, various lawsuits were filed against a number of parties, seeking to recover funds from recipients of allegedly fraudulent transfers, as well as asserting legal and accounting malpractice claims. After Erxleben was convicted, the Receiver made initial

distributions to the investors of AFI and IFX in December 2000. Ultimately, at the time the receivership was closed in December 2004, with interest, the Receiver had taken in a total of $35,780,634.53, and after paying expenses, attorneys' fees, and her fees, paid out $23,594,025.00 to defrauded investors. Many, if not most, of the parties who received payments from the receivership were also victims who were awarded restitution in the Judgment against Erxleben entered in this criminal case. The United States concedes that the recoveries made by the Receiver on behalf of the investors of AFI and IFX are on account of the same loss that Erxleben inflicted on his victims. Thus, the Government acknowledges that Erxleben is entitled to a credit against the restitution he owes for any money that the Receiver paid to a person who is also identified in the Erxleben judgment as a victim. The issue raised by the Government's motion is determining the method to account for these payments.

Before applying any credit for the receivership payments, it appears that Erxleben's restitution obligation is $28,040,450.99 (which includes a credit of $18,610 for money Erxleben has paid toward the restitution). As noted above, the allowed claims in the receivership case totaled nearly $36.5 million, and on those claims the total paid out of the receivership was roughly $23.6 million. The difference between the claims made and the amount paid toward them is thus a little more than $12.8 million. The Government argues that this sum represents the net remaining loss of Erxleben's victims. It thus proposes that the Court apply toward the restitution balance an amount that results in the restitution balance being reduced to the net remaining loss figure of $12.8 million (which would be $15,238,841.06).

For his part, Erxleben maintains that the Receiver collected a gross amount of more that $35 million and he should receive a credit for this entire sum. Because his total restitution balance is less

3

than $35 million, Erxleben thus contends that the appropriate credit should wipe out his restitution obligation. In addition, Erxleben maintains that the Government's methodology in crediting him only $15,238,841.06 of the $23,594,025.00 that was disbursed to investors of AFI and IFX is flawed. Erxleben requests discovery on this issue arguing it is needed so he can dispute the amount he owes in restitution.

## Analysis

### A.     Motion for Order Applying Credit

The United States is correct that Erxleben is entitled to a credit from the monies that his victims were paid by the Receiver, as the recoveries made by the Receiver on behalf of the investors of AFI and IFX were on account of the same loss that Erxleben inflicted on these victims. But the method the Government proposes the Court use to calculate the credit due is tortured. The proper way to determine the credit due is by a comparison of two known universes of information: (1) the identity of, and amounts paid to, recipients of money from the Receiver; and (2) the identity of, and amount of restitution owed to, the victims of Erxleben's criminal fraud. The latter group is explicitly set forth in the Judgment in this case (Dkt. No. 25, Attached Victim List - Pages 6A-6J). The first group is no doubt also a known universe of information, as the Receiver was required to account for all payments she disbursed. By comparing these two data sets, the exact amount of restitution that remains to be paid, and to whom it is owed, will be clear.

As for Erxleben's claim that he is entitled to receive a credit for the gross amount of money the Receiver collected, he is incorrect. Those monies were only recovered as a result of the legal and other work done to pursue the third parties who either received funds from Erxleben's entities, or were claimed to have been liable for providing legal and accounting services to Erxleben. These

"recovery costs" were paid out of the total amounts the Receiver collected, and were never transmitted to the investors. The only credit Erxleben is entitled to is the amount actually paid to his victims.

Accordingly the Court **ORDERS** that the United States make a victim-by-victim reconciliation of all amounts paid by the Receiver to any of the victims listed in the Judgment in this case, and generate a spreadsheet identifying the amount that was paid by the Receiver to each victim of this case, and the amount of restitution remaining due to each victim after the receivership payments are credited. The spreadsheet shall have the following data:

| Victim | Original restitution | Payments from Receiver | Remaining restitution owed |
|---|---|---|---|
|  |  |  |  |

When it submits the reconciliation, the Government shall also file the data it used to identify the payments the Receiver made to investors (all of which should be filed under seal). A copy of the reconciliation shall also be served on Erxleben. The Court **FURTHER ORDERS** that this material be filed no later than June 28, 2019.

The Court therefore **GRANTS IN PART and DENIES IN PART** the United States' Motion for an Order Applying Credit to Defendant's Restitution Debt (Dkt. No. 92), as set forth above.

B. **Remaining Motions**

Erxleben requests that the Court stay the implementation of the Court's earlier order allowing the Government to begin receiving Erxleben's retirement benefits so that it may apply those benefits to the restitution the remains outstanding.[1] This request was based on Erxleben's theory that all of

---

[1] The Agreed Disposition Order (Dkt. No. 48) filed on March 19, 2001, provides that "at such time as [Erxleben's] pension benefits become payable, the United States of America will advise the

5

his restitution obligation was satisfied by the Receiver's collection efforts. As noted, however, that theory is flawed. The Judgment in this case ordered Erxleben to pay $28,040,450.99 in restitution. The total amount the Receiver distributed was $23,594,025.00. Even if Erxleben is entitled to a credit for every penny paid out by the Receiver, a restitution balance of nearly $4.5 million will remain. Accordingly, Erxleben's Motion to Stay the Court's Consideration of the Government's Application for Garnishment (Dkt. No. 96) is **DENIED**.

Erxleben also requests extensive discovery relating to the Receiver's report and the factual foundation of that report. There is no basis for this, as Erxleben is not entitled to relitigate what the Receiver did, and how she distributed the monies she collected. The only information from the Receivership relevant here is the amounts she distributed, and to whom she paid them. The Court has ordered the Government to obtain this information, and provide it in a spreadsheet. Accordingly, Erxleben's Motion for Discovery (Dkt. No. 97) is **DENIED**.

Finally, Erxleben's additional Motion to Stay (Dkt. No. 104) and Motion for a Hearing (Dkt. No. 105) are **DENIED.**

SIGNED this 25th day of April, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

Plan of the amount of debt then owed in this case, and any benefits then payable to Defendant [United States] will be delivered by the Plan to the Clerk, United States District Court." *Id.* at 1-2.